**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 14-2382**

---

JUDITH GENTRY,

Plaintiff - Appellant,

v.

EAST WEST PARTNERS CLUB MANAGEMENT COMPANY, INC.; JAY MANNER, individually; MAGGIE VALLEY RESORT MANAGEMENT, LLC,

Defendants - Appellees.

---

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Max O. Cogburn, Jr., District Judge. (1:13-cv-00108-MOC-DLH)

---

Argued: December 10, 2015            Decided: March 4, 2016

---

Before AGEE, FLOYD, and THACKER, Circuit Judges.

---

Affirmed by published opinion. Judge Floyd wrote the opinion, in which Judge Agee and Judge Thacker joined.

---

**ARGUED**: Glen Coile Shults, Jr., LAW OFFICE OF GLEN C. SHULTS, Asheville, North Carolina, for Appellant. Matthew J. Gilley, FORD HARRISON, LLP, Spartanburg, South Carolina; Jonathan Woodward Yarbrough, CONSTANGY, BROOKS, SMITH & PROPHETE, LLP, Asheville, North Carolina, for Appellees. **ON BRIEF**: Jule Seibels Northup, NORTHUP MCCONNELL & SIZEMORE, PLLC, Asheville, North Carolina, for Appellant.

---

FLOYD, Circuit Judge:

After her employment was terminated, Appellant Judith Gentry sued her former employers for disability discrimination under the Americans with Disabilities Act (ADA) and for other violations of state and federal law. A jury found in favor of Gentry on certain state law claims, for which it awarded her $20,000 in damages, and in favor of the employers on all other claims. On appeal, Gentry challenges the district court's jury instructions under the ADA and the damages award. Because we find no reversible error, we affirm the district court.

I.

The following facts were adduced at trial. Prior to her termination, Gentry was an executive housekeeper at the Maggie Valley Club and Resort (the Club), supervising a staff of eight to ten housekeepers at an annual salary of $39,381. The Club is owned by Appellee Maggie Valley Resort Management, LCC (Maggie Valley). In September 2008, Maggie Valley hired Appellee East West Partners Club Management Company, Inc. (East West) to operate the Club, and in October 2008, East West hired Appellee Jay Manner as the Club's general manager.

In July 2007, Gentry fell at work, injuring her left foot and ankle. She filed for workers' compensation benefits. Throughout the next year, Gentry received treatment from Dr.

Peter Mangone, who performed surgery on Gentry's ankle in October 2008. Gentry returned to work in January 2009 with no restrictions, though she continued to experience pain and difficulty walking. In January 2010, Dr. Mangone determined that, under North Carolina's workers' compensation guidelines, Gentry had a 30 percent permanent physical impairment to her ankle. He noted that she could perform her full job duties but might require additional surgery in the future.

Soon thereafter, the Club's insurance carrier offered to settle Gentry's workers' compensation claim. Gentry declined, expressing concern that she might be terminated if she accepted, and instead pursued mediation. In October 2010, insurance adjuster Brenda Smith called Manner to discuss Gentry's claim. The accounts of that conversation vary. According to Smith, Manner expressed surprise at Gentry's concerns about being terminated and described her as a "great worker" who did "a great job." J.A. 183. He further indicated that while the Club was struggling financially and considering layoffs, no particular individuals had been identified for termination. Manner, however, generally denied making these statements. According to Manner, Smith stated that the insurance company felt extorted by Gentry and that it was only a matter of time before Gentry filed another claim against the Club. Smith denied making these statements. Manner then called the

3

principals of Maggie Valley and East West and relayed his version of the conversation with Smith.

Manner and Gentry met to discuss the upcoming mediation of her workers' compensation claim. Gentry testified that Manner summoned her to his office and sternly interrogated her about her claim. Manner, however, testified that Gentry voluntarily approached him to discuss her claim and the ongoing problems with her foot, and that the meeting was not hostile. Gentry's workers' compensation claim was ultimately settled at mediation in November 2010.

In December 2010, Gentry was terminated. According to Appellees, the termination was part of a restructuring plan designed to cut the Club's costs. Appellees presented evidence that the Club had been losing money since its inception and was particularly hard hit during the recession, operating at a net loss of approximately $2 million in both 2008 and 2009. In the spring and summer of 2010, Appellees developed a plan to eliminate certain managerial positions, including Gentry's, and consolidate their responsibilities among fewer managers. The plan was put into effect in December, when Gentry and two other department heads were terminated and eight other employees were either terminated or had their hours reduced. Further layoffs occurred the following year. At the time of trial, the housekeeping department had only three full-time equivalent

4

employees and the new housekeeping director, Richard Smith, performed the duties previously performed by Gentry and two other employees while continuing to perform some of his prior maintenance duties. According to Appellees, the restructuring improved the Club's financial condition and helped reduce its losses to approximately $1.5 million in 2011 and $1 million in 2012. Appellees maintained that Gentry's position was eliminated solely to reduce costs.

Gentry, however, testified that after her termination, she met with Maggie Valley executive Ray Hobby, who informed her that Manner had admitted to terminating Gentry because of the "issues with [her] ankle" and because she "could be a liability to the club." J.A. 137. Gentry also presented the testimony of Equal Employment Opportunity Commission (EEOC) investigator John Brigman, who had interviewed Hobby while investigating Gentry's EEOC charge. According to Brigman, Hobby confirmed that Manner had told him that Gentry was "let go due to her disability and her liability to the club." J.A. 861. Hobby denied making these statements and further denied that Manner had made any such statements to him.

Gentry also presented evidence to undercut Appellees' cost-saving rationale, including evidence indicating that Richard Smith, who had assumed Gentry's responsibilities, performed only minimal maintenance duties and that his pay eventually increased

5

to be only $4,000 to $5,000 less than Gentry's. Gentry also established that there was no memorialization of the spring and summer 2010 meetings at which the restructuring plan, including her termination, was allegedly discussed. Additionally, Maggie Valley executive Purser McLeod testified that he only learned of Gentry's impending termination in the fall of 2010, when Manner called to inform him of Gentry's workers' compensation claim. No one contended that Gentry was terminated for reasons related to her work performance; no one at Maggie Valley or East West had ever criticized or complained about her performance, and Hobby described her as an "outstanding" employee who "did an excellent job." J.A. 209.

Gentry sued Maggie Valley and East West for (1) disability discrimination under the ADA and North Carolina common law; (2) sex discrimination under Title VII and North Carolina common law; and (3) retaliation against Gentry for pursuing a workers' compensation claim, in violation of North Carolina common law. She also sued East West and Manner for tortiously interfering with her employment contract with Maggie Valley. After a weeklong trial, the jury found East West liable for workers' compensation retaliation and awarded Gentry $10,000. The jury also found East West and Manner liable for tortiously interfering with Gentry's employment, and awarded separate damages of $5,000 each against East West and Manner. The jury

6

found in favor of Appellees on all other claims.  After the district court entered judgment, Gentry moved for a new trial, which the district court denied.  This appeal followed.

On appeal, Gentry argues that the district court incorrectly instructed the jury on the causation standard for disability discrimination claims under the ADA and on the ADA's definitions of disability.  She further argues that the district court erred in refusing to admit evidence of Appellees' liability insurance and indemnification.  Finally, she contends that she is entitled to a new trial on damages for the claims on which she prevailed.  Each contention is discussed in turn.

## II.

We review challenges to jury instructions for abuse of discretion, bearing in mind that "a trial court has broad discretion in framing its instructions to a jury."  Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 484 (4th Cir. 2007).  "Instructions will be considered adequate if construed as a whole, and in light of the whole record, they adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the [objecting] party."  Bunn v. Oldendorff Carriers GmbH & Co. KG, 723 F.3d 454, 468 (4th Cir. 2013) (quotation omitted).  "We review de novo whether the district court's instructions to the

7

jury were correct statements of law." Emergency One, Inc. v. Am. FireEagle, Ltd., 228 F.3d 531, 538 (4th Cir. 2000). "Even if a jury was erroneously instructed, however, we will not set aside a resulting verdict unless the erroneous instruction seriously prejudiced the challenging party's case." Bunn, 723 F.3d at 468 (emphasis in original) (quotation omitted).

III.

Title I of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). The district court instructed the jury that Gentry had to demonstrate that her disability was the "but-for" cause of her termination. Gentry argues that this was in error, as the court should instead have adopted Title VII's "motivating factor" causation standard.

Title VII prohibits employers from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The Civil Rights Act of 1991 (1991 Act) amended Title VII to provide that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for

8

any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). The 1991 Act further provided that if a plaintiff proved a violation under § 2000e-2(m) but the defendant demonstrated that it "would have taken the same action in the absence of the impermissible motivating factor," a court may grant the plaintiff declaratory relief, attorney's fees and costs, and certain injunctive relief, but may not award monetary damages or reinstatement. See id. § 2000e-5(g)(2)(B).[1]

In Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009), the Supreme Court considered whether Title VII's "motivating factor" standard applied to claims brought under the Age Discrimination in Employment Act (ADEA), which prohibits employers from "discriminat[ing] against any individual . . .

---

[1] The "motivating factor" standard originated with Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), where "a plurality of the Court and two Justices concurring in the judgment determined that once a 'plaintiff in a Title VII case proves that [the plaintiff's membership in a protected class] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken [that factor] into account.'" Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 173-74 (2009) (alterations in original)(quoting Price Waterhouse, 490 U.S. at 258). The 1991 Act partly codified and partly rejected the Price Waterhouse framework, and "there is no reason to think that the different balance articulated by Price Waterhouse somehow survived that legislation's passage." Univ. of Tex. Sw. Med. Ctr. v. Nassar, —U.S.—, 133 S. Ct. 2517, 2526, 2534 (2013).

because of such individual's age." 29 U.S.C. § 623(a)(1). The Court held that it did not, explaining:

> Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor. Moreover, Congress neglected to add such a provision to the ADEA when it amended Title VII to add §§ 2000e-2(m) and 2000e-5(g)(2)(B), even though it contemporaneously amended the ADEA in several ways.
>    We cannot ignore Congress' decision to amend Title VII's relevant provisions but not make similar changes to the ADEA. When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.

Gross, 557 U.S. at 174 (citation omitted). Examining the language of the ADEA, the Court concluded that discrimination "because of" age meant that "age was the 'reason' that the employer decided to act." Id. at 176. Thus, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Id.

The Supreme Court's analysis in Gross dictates the outcome here. The ADA's text does not provide that a plaintiff may establish liability by showing that disability was a motivating factor in an adverse employment decision. Furthermore, the 1991 Act that added the "motivating factor" standard to Title VII "contemporaneously amended" provisions of the ADA but did not add that standard. See Pub. L. No. 102-166, §§ 109, 315. We conclude that Title VII's "motivating factor" standard cannot be read into Title I of the ADA. In reaching this conclusion, we

10

join the Sixth and Seventh Circuits. See Lewis v. Humboldt Acquisition Corp., 681 F.3d 312 (6th Cir. 2012) (en banc); Serwatka v. Rockwell Automation, Inc., 591 F.3d 957 (7th Cir. 2010).

Gentry argues that Gross is not controlling here because unlike the ADEA, the ADA indirectly incorporates Title VII's "motivating factor" standard by reference. Specifically, the ADA's "Enforcement" provision states:

> The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter . . . .

42 U.S.C. § 12117(a). However, while this language incorporates Title VII's "Enforcement provisions" in § 2000e-5, it does not incorporate the "Unlawful employment practices" in § 2000e-2, including § 2000e-2(m), which establishes mixed motive employment practices as unlawful. See Serwatka, 591 F.3d at 962 ("[A]lthough section 12117(a) cross-references the remedies set forth in section 2000e-5(g)(2)(B) for mixed-motive cases, it does not cross-reference the provision of Title VII, section 2000e-2(m), which renders employers liable for mixed-motive employment decisions." (emphasis in original)).

Gentry notes that § 2000e-5(g)(2)(B) cross-references § 2000e-2(m). However, § 2000e-5(g)(2)(B) merely specifies the

11

remedies available when a plaintiff establishes a violation of § 2000e-2(m), that is, when a plaintiff establishes that "race, color, religion, sex, or national origin was a motivating factor" in an employment action. Section 2000e-5(g)(2)(B) cannot be read as somehow excising § 2000e-2(m)'s causation standard from its limited application to claims of race, color, religion, sex, and national origin discrimination and applying it to claims under the ADA. See Lewis, 681 F.3d at 320 (explaining that § 2000e-5(g)(2)(B) "does not direct judges to apply the substantive 'motivating factor' standard from § 2000e-2(m); it permits them only to provide a remedy for . . . a violation under section 2000e-2(m)" (quotation omitted)). Such a broad reading is particularly inadvisable as Gross instructs us to hew closely to the text of employment discrimination statutes.[2,3]

---

[2] Gentry's reliance on § 2000e-5(a) is similarly unavailing, if not more tenuous, as that section does not reference the "motivating factor" provision but rather broadly provides that the "Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e-2."

[3] Gentry asks the Court to apply the analysis of Baird ex rel. Baird v. Rose, 192 F.3d 462 (4th Cir. 1999), an ADA Title II case that was decided prior to Gross. In Baird, the question facing the Court was whether to continue applying the "solely on the basis of" causation standard, derived from the Rehabilitation Act, to ADA Title II claims. Id. at 468. After answering that question in the negative, and without the benefit of Gross, we determined that Title VII's "motivating factor" (Continued)

Instead, to invoke Title VII's enforcement provisions, an ADA plaintiff must allege a violation of the ADA itself—a violation of "<u>this</u> chapter." 42 U.S.C. § 12117(a) (emphasis added). As discussed above, the ADA's text does not provide that a violation occurs when an employer acts with mixed motives.[4]

The only remaining question is whether the ADA's text calls for a "but-for" causation standard. We hold that it does. The ADA prohibits discrimination "on the basis of" disability. 42 U.S.C. § 12112(a). We see no "meaningful textual difference" between this language and the terms "because of," "by reason of," or "based on"—terms that the Supreme Court has explained connote "but-for" causation. See <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, ——U.S.——, 133 S. Ct. 2517, 2527-28 (2013). A "basis" is "[t]he justification for or reasoning behind something." <u>Basis</u>, New Oxford American Dictionary (3d ed. 2010); <u>see also</u> Merriam-

---

standard should apply based on Title II's incorporation of Title VII's enforcement provisions. <u>See</u> <u>id.</u> at 470. <u>Baird</u>, however, is not controlling here and in light of the Supreme Court's subsequent guidance in <u>Gross</u>, we decline to extend <u>Baird</u>'s analysis to this case.

[4] We find the Sixth Circuit's analysis of the ADA's legislative history to be well reasoned, and agree that the legislative history does not alter our conclusion that the ADA does not incorporate Title VII's "motivating factor" standard. <u>See</u> <u>Lewis</u>, 681 F.3d at 320-21.

13

Webster's Advanced Learner's English Dictionary (2008) (defining "on the basis of" as "according to[,] based on").

Moreover, legislative history does not suggest that "on the basis of" was intended to mean something other than but-for causation. As originally enacted, the ADA prohibited discrimination "against a qualified individual with a disability because of the disability of such individual." Pub. L. No. 101-336, § 102 (1990). The ADA Amendments Act of 2008 (ADAAA) changed this language to its present form, prohibiting discrimination "against a qualified individual on the basis of disability." See Pub. L. No. 110-325 § 5 (2008). This was done to "ensure[] that the emphasis in questions of disability discrimination is properly on the critical inquiry of whether a qualified person has been discriminated against on the basis of disability, and not unduly focused on the preliminary question of whether a particular person is a 'person with a disability.'" 154 Cong. Rec. S8840-01 (Sept. 16, 2008) (Senate Statement of Managers). The legislative history suggests the language was changed to decrease the emphasis on whether a person is disabled, not to lower the causation standard. Finally, we note that the amended language was enacted before Gross and therefore not in response to Gross's causation analysis. Accordingly, we

14

conclude that the district court correctly applied a "but-for" causation standard to Gentry's ADA claim.[5]

IV.

Gentry also challenges the district court's instructions on the definitions of disability. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Gentry asserted all three forms of disability and argues that the court erroneously instructed the jury on each. She disputes the court's definition of "substantially limits" and its instructions on

---

[5] Gentry complains that the district court instructed the jury that disability had to be "the but-for" cause of her termination instead of "a but-for" cause. While we agree that "a but-for" cause is the appropriate formulation, we find no abuse of discretion in the district court's instructions. The Supreme Court has repeatedly used "the but-for" language. See Gross, 557 U.S. at 177-78 ("A plaintiff must prove . . . that age was the 'but-for' cause of the challenged employer decision." (emphasis added)); Nassar, 133 S. Ct. at 2528 ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.") (emphasis added). While the district court at one point misspoke and stated that disability had to be the sole cause of Gentry's termination, the court corrected itself by providing oral and written instructions that disability need not be the "only or sole cause" of Gentry's termination. See J.A. 725, 940.

15

"regarded as" and "record of" disability.  These arguments are addressed below.

### A.

The district court instructed the jury that "[a]n impairment substantially limits a major life activity, if it prevents or significantly restricts a person from performing the activity, compared to an average person in the general population."  J.A. 697.  Gentry did not object to this instruction, which was similar to the one she had proposed.[6]

On appeal, however, Gentry argues that the "prevents or significantly restricts" standard is too demanding under the ADAAA.  The ADAAA sought to "reinstat[e] a broad scope of protection" after the Supreme Court had "created an inappropriately high level of limitation necessary to obtain coverage under the ADA."  Pub. L. No. 110-325, § 2(b)(1),(5).  Specifically, the ADAAA rejected the standard enunciated in Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002), that to be substantially limiting, an impairment must "prevent[] or severely restrict[]" a major life

---

[6]  Gentry proposed the instruction: "[a]n impairment 'substantially limits' a major life activity if it prevents or restricts a person from walking, standing, lifting, and bending compared to the average person in the general population."  J.A. 54.

16

activity.  See Pub. L. No. 110-325, § 2(b)(5).  The ADAAA directed the EEOC to revise its regulation defining "substantially limits" to reflect this broadened understanding of "disability."  See id. § 2(b)(6).  EEOC regulations now provide that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(ii).

Because Gentry did not object to the district court's instruction, we review for plain error.  On plain error review, Gentry must establish (1) that the district court erred; (2) that the error was plain; and (3) that the error affected her substantial rights, meaning that "there must be a reasonable probability that the error affected the outcome of the trial." United States v. McDonnell, 792 F.3d 478, 502 (4th Cir. 2015) (quoting United States v. Marcus, 560 U.S. 258, 262 (2010)). "The mere possibility that the error affected the outcome of the trial" does not suffice.  Id.  Even then, the error "should only be corrected where not doing so would result in a 'miscarriage of justice' or would otherwise 'seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings.'"  United States v. Robinson, 627 F.3d 941, 954 (4th Cir. 2010) (alteration in original) (quoting United States v. Olano, 507 U.S. 725, 736 (1993)).

17

Even if we assume that the district court's instruction was erroneous and that the error was plain, Gentry has not shown that it affected her substantial rights. Gentry offers little to suggest that her disability discrimination claims failed because the jury believed that her impairment did not meet the district court's definition of "substantially limits." She does not contend that Appellees argued to the jury that the standard for "disability" was demanding or that Gentry's impairment was insufficiently severe. Nor does she demonstrate that the extent of her impairment was a seriously contested issue at trial. Moreover, there are ample facts from which the jury could have found that her termination was not the result of an impairment to her foot, regardless of how severe. Gentry was not terminated until more than three years after her injury and more than two years after her surgery. At no point did her employers complain about her ability to perform her job duties. In fact, trial testimony indicated that they, including Manner, considered her to be an excellent employee. The strongest evidence Gentry presented of disability discrimination was that Manner allegedly admitted to Hobby that Gentry was terminated "due to her disability." J.A. 161. If the jury credited this evidence, it is unlikely they would nevertheless find in favor of Appellees because they believed Gentry's impairment did not constitute a disability. On this record, we cannot say there is

18

a "reasonable probability" that the district court's instruction affected the outcome of Gentry's disability discrimination claims. Finally, Gentry offers no argument as to how failure to correct the district court's instruction would result in a miscarriage of justice or would seriously affect the fairness, integrity, or public reputation of the judicial proceedings. Accordingly, we find that Gentry has failed to satisfy the plain error standard.

## B.

Gentry next contends that the district court erred in instructing the jury on the "regarded as" prong of the definition of disability. The district court instructed that "disability . . . discrimination laws are designed to protect individuals who . . . may be perceived as disabled from being discriminated against in the workplace" and that "you must decide whether . . . a perception that [Gentry] was disabled, was the 'but for' reason that [Appellees] . . . terminate[d] her employment." J.A. 698-99. The verdict form similarly asked whether Gentry's "disability, a record of disability, or a perception by [Appellees] that [Gentry] had a disability" was the "but-for" reason for her termination. See J.A. 733-34.

Gentry argues that the court should have instructed that Gentry satisfied the "regarded as" prong if she was

19

discriminated against "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." See 42 U.S.C. § 12102(3)(A); J.A. 55. Gentry contends that this language, which was added by the ADAAA, is important because "a plaintiff no longer needs to show that the employer thought that the employee had a substantial limitation in a major life activity;" instead, a plaintiff need only show that adverse action was taken because of the plaintiff's impairment, "without regard to how serious the employer thought that it was." Br. of Appellant 41.

Assuming that Gentry properly preserved an objection to the court's instruction, we do not see how she was prejudiced by it.[7] The court instructed that Appellees were liable if they discriminated against Gentry because they perceived her to be disabled, which conveyed that Gentry did not actually have to be disabled. Gentry's primary evidence of disability discrimination was that Manner allegedly stated that Gentry was terminated "due to her disability." See J.A. 161. If the jury

---

[7] At trial, Gentry merely stated that "the regarded as definition was not in there. I was just wondering whether to include that." J.A. 723. We question whether this qualifies as "stating distinctly the matter objected to and the grounds for the objection," Fed. R. Civ. P. 51(c), but will assume arguendo that it does.

believed that evidence, the instruction informed the jury that Gentry's termination was unlawful. Thus, even if we assume that the court's instruction was erroneous, the error did not seriously prejudice Gentry.

Moreover, the district court acted within its discretion when it determined that the full "regarded as" instruction proposed by Gentry was not warranted under the circumstances of the case. After hearing all of the evidence, and mindful that the jury would already be grappling with complex and nuanced instructions on multiple discrimination and related claims under state and federal law, the court declined to give the full instruction, stating:

> I will not go beyond that. The evidence with regard to disability is the statement. If they believe the statement, they are going to get that anyway. If they can fight their way through the confusion of this thing to get to the disability claim, you have got a possibility of winning this. On the rest of this stuff, you have a hard row to hoe.

J.A. 723.

We find no abuse of discretion and no serious prejudice to Gentry that warrants vacating the verdict on her disability discrimination claims.

C.

Finally, Gentry challenges the district court's instruction on "record of" disability. EEOC regulations provide that "[a]n

21

individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). Gentry argues that the district court improperly shortened this definition by omitting the "misclassified" clause.

Gentry did not object to the district court's instruction below and on appeal she does not explain how the omitted language applies to her case. We therefore have no basis for finding that the district court erred or otherwise abused its discretion.

V.

We move next to Gentry's challenges to the damages the jury awarded on her state law claim against East West for workers' compensation retaliation and on her claims against East West and Manner for tortious interference with a contract. For these claims, the jury was instructed that it could award damages for back pay, front pay, emotional pain and suffering, and nominal damages. The jury was further instructed that Gentry had to mitigate her damages using reasonable diligence, which "requires the employee seek and accept similar employment in the same locality." J.A. 710. The court instructed that if Appellees proved that Gentry failed to mitigate, the jury was to reduce

22

her damages based on what she could have earned using reasonable diligence. Ultimately, the jury awarded $10,000 against East West for workers' compensation retaliation and $5,000 against East West and Manner each for tortious interference. On appeal, Gentry argues that the district court erred in denying Gentry's motion to introduce evidence of East West's insurance coverage and indemnification and in denying her motion for a new trial on damages.

A.

Gentry argues that the jury's damages award was tainted by Appellees' belaboring of their poor financial condition. Gentry claims that this "poor mouthing" left the jury with the impression that a significant judgment would be overly burdensome, and that she should have been allowed to dispel this impression by presenting evidence of East West's liability insurance and its indemnification agreement with Maggie Valley.

We review evidentiary rulings for abuse of discretion and "will only overturn an evidentiary ruling that is arbitrary and irrational." Noel v. Artson, 641 F.3d 580, 591 (4th Cir. 2011) (quoting United States v. Cole, 631 F.3d 146, 153 (4th Cir. 2011)). We find no basis for overturning the district court's ruling here.

While Gentry is correct that Appellees testified at length about the Club's financial losses, that evidence was central to their defense that Gentry was terminated as part of an effort to reduce the Club's costs. Although Appellees also presented evidence of the Club's financial condition after Gentry's termination, that evidence was arguably relevant to demonstrate that their cost-saving efforts were effective and not pretextual. Moreover, Gentry points to nothing in the record indicating that Appellees claimed that they could not pay the judgment or suggested that the jury should consider their financial condition in determining the damages to award.[8]

Gentry also does not explain how evidence of the Club's financial losses would reflect on the ability of East West and Manner to pay the judgment, as they did not own the Club.[9] The only "poor mouthing" specific to these entities that Gentry identifies is that East West lost numerous clients as a result

---

[8] These considerations, as well as the fact that punitive damages were not at issue here, distinguish this case from those cited by Gentry. See Lawson v. Towbridge, 153 F.3d 368, 378-80 (7th Cir. 1998); Kemezy v. Peters, 79 F.3d 33, 37 (7th Cir. 1996); Mathie v. Fries, 121 F.3d 808, 816 (2d Cir. 1997); Adkins v. McClanahan, No. 1:12CV00034, 2013 WL 5202402, at *4 (W.D. Va. Sept. 16, 2013).

[9] The agreement between Maggie Valley and East West in the record indicates that East West received a fixed management fee with the potential for a bonus based on the Club's performance. See J.A. 781, 798.

of the recession, and Manner voluntarily took a pay cut from his $140,000 salary and had not received a bonus in the two years prior to trial. The district court did not abuse its discretion in finding this "poor mouthing" insufficient to open the door to evidence of East West's insurance coverage and indemnification.[10]

Finally, as the district court noted, the jury was instructed to award Gentry "fair compensation" for her damages. See, e.g., J.A. 708. Gentry has not overcome the presumption that the jury followed the court's instructions, see McDonnell, 792 F.3d at 503, and did not base its award on Appellees' ability to pay.

In short, we find no abuse in the district court's refusal to admit evidence of East West's insurance coverage and indemnification. While such evidence may not have been strictly prohibited by Federal Rule of Evidence 411, as it was not offered to show that Appellees "acted negligently or otherwise wrongfully," the court was within its discretion to find that the evidence's probative value was substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403; J.A. 79.

---

[10] We note that Gentry was in fact permitted to show the jury the indemnification clause in the contract between Maggie Valley and East West, though she was not permitted to ask further questions about the clause's application. See J.A. 303–05.

Finally, Gentry argues that she is entitled to a new trial on damages because the jury's $20,000 award was inadequate. Gentry's damages expert, Dr. Richard Bohm, testified that Gentry incurred back pay damages of $133,093 and front pay damages of $297,568. Gentry concludes that the jury "apparently found that Plaintiff failed to mitigate her damages" and reduced her award. Br. of Appellant 53. She argues that this was against the clear weight of the evidence, and thus the district court erred in denying her motion for a new trial. See Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (explaining that the district court is to grant a new trial where "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict").

"'We review for abuse of discretion a district court's denial of a motion for new trial,' and 'will not reverse such a decision save in the most exceptional circumstances.'" Bunn, 723 F.3d at 468 (quoting Figg v. Schroeder, 312 F.3d 625, 641 (4th Cir. 2002)). "We commit this decision to the district court because the district judge is in a position to see and hear the witnesses and is able to view the case from a perspective that an appellate court can never match." Bristol

26

Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir. 1994)(quotation omitted).  The "crucial inquiry" on review is "whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair."  Id. (quotation omitted).

We find that Gentry has not met her substantial burden of showing that the district court abused its discretion.  Gentry asks us to infer that the jury reduced her award because of her failure to mitigate.  This, however, is speculative.  The jury was not required to specify the type of damages it awarded nor the basis for the award.  It is possible, for example, that the jury did not fully credit Dr. Bohm's testimony regarding Gentry's damages, including his assumption that Gentry's salary would have steadily increased had she not been terminated.  Appellees presented ample evidence that the Club was cutting costs, including after Gentry's termination, and the jury could infer that Gentry's salary, which was relatively high among the Club's staff, would have decreased.

With respect to mitigation, Gentry presented evidence that she sought employment from December 2010 to December 2011, making two contacts per week as required to maintain unemployment benefits, and sometimes more.  Gentry testified that she limited her search to Haywood County because of family responsibilities and because she experienced anxiety driving

27

long distances. She obtained a part-time position from March 2011 to December 2011, when she switched to another part-time position that became full-time in September 2012. Gentry's occupational expert testified that Gentry's job search was reasonable and that she obtained the best job available in light of her circumstances. Appellees' vocational expert testified that Gentry's search was inadequate, primarily because Gentry made an insufficient number of contacts and because she limited her search to Haywood County when there were more opportunities at higher salaries in neighboring Buncombe and Jackson Counties.

The jury was not required to accept Gentry's assertion that she was restricted to seeking jobs in Haywood County and could have found that her refusal to seek jobs elsewhere, coupled with the cessation of her job search efforts after December 2011 despite having only part-time work, did not constitute "reasonable diligence."[11]

On appeal, Gentry argues that the duty to mitigate "is not onerous" and does not require "engag[ing] in an additional commute to search for a high-paying position." Br. of Appellant 52, 56. She cites several cases in support of these

---

[11] We also note that evidence in the record indicated that Gentry received unemployment benefits after her termination. See J.A. 372. Per the district court's instructions, the jury was permitted to reduce the award on that ground. See J.A. 710.

propositions. However, Gentry did not propose any such instructions to the district court nor did she object to the instructions that the court gave. See Curley v. Standard Motor Prods., Inc., 27 F.3d 562, at *2 (4th Cir. 1994) (unpublished table decision) (affirming denial of motion for a new trial that was "based primarily on objections which were foreclosed by [party's] failure to object to the introduction of evidence, and [party's] approval of, or failure to object to the court's instructions"); see also Bryant v. Mathis, 278 F.2d 19, 20 (D.C. Cir. 1960) (affirming denial of motion for a new trial on damages where plaintiff was entitled to, but did not request, instruction that lost wages were recoverable notwithstanding compensation from a collateral source). Under these circumstances, we affirm the district court's denial of Gentry's motion for a new trial.

VI.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED