Chin, Circuit Judge, dissenting:
The district court granted summary judgment dismissing plaintiff-appellant Richard Natofky's claims on the basis that a reasonable jury could not find that his disability was a but-for cause of the employer's actions. The majority affirms. While I agree that a but-for causation standard applies to the retaliation claim, I believe that the discrimination and failure-to-accommodate claims brought under the Rehabilitation Act are governed by the same standard that the courts have uniformly applied for more than two decades -- the motivating-factor standard. Accordingly, I concur in the dismissal of the retaliation claim, but I dissent from the dismissal of the discrimination and failure-to-accommodate claims.
I agree with the majority that the Rehabilitation Act incorporates the causation standard of the Americans with Disabilities Act (the "ADA"). The issue is whether the ADA continues to use a motivating-factor standard, even in light of the 2008 Amendments to the ADA and the Supreme Court's decisions in Gross v. FBL Fin. Servs., Inc ., 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), and Univ. of Tex. Sw. Med. Ctr. v. Nassar , 570 U.S. 338, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013). I respectfully disagree with the majority's conclusion *355 that a but-for standard now governs ADA and Rehabilitation Act claims.
First, the reasoning in Gross does not apply to ADA claims. In Gross , the Supreme Court analyzed which causation standard governs claims under the Age Discrimination in Employment Act (the "ADEA") -- not claims under the ADA. The Court cautioned that "we 'must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination.' " Gross , 557 U.S. at 174, 129 S.Ct. 2343 (quoting Fed. Express Corp. v. Holowecki , 552 U.S. 389, 393, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) ). The Court then noted that Title VII did not control its construction of the ADEA because "Title VII is materially different with respect to the relevant burden of persuasion." Id. at 173, 129 S.Ct. 2343. Importantly, the ADA incorporates the powers, remedies, and procedures of Title VII, see 42 U.S.C. § 12117(a) (incorporating "[t]he powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9"), whereas the ADEA incorporates the powers, remedies, and procedures of the Fair Labor Standards Act, see 29 U.S.C. § 626(b) ("The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section."). Hence, different rules apply to the ADA and Rehabilitation Act than to the ADEA.
Moreover, in Gross , the Supreme Court held that ADEA claims are governed by the but-for standard -- not the motivating-factor standard -- because (1) the Court had "never held" that Title VII's motivating-factor standard applies to ADEA claims, and (2) "Congress neglected to add such a [motivating-factor] provision to the ADEA when it amended Title VII to add §§ 2000e-2(m) and 2000e-5(g)(2)(B), even though it contemporaneously amended the ADEA in several ways." Id. at 174-75, 129 S.Ct. 2343.
These rationales do not apply to the ADA. The motivating-factor standard has governed ADA claims for more than two decades. See, e.g. , Parker v. Columbia Pictures Indus ., 204 F.3d 326, 337 (2d Cir. 2000) ; Pedigo v. P.A.M. Transp., Inc ., 60 F.3d 1300, 1301 (8th Cir. 1995). Furthermore, when Congress amended Title VII in 1991 to include the motivating-factor language, see Civil Rights Act of 1991, Pub. L. No. 102-166, §§ 107, 109, 105 Stat. 1071, 1076-78 (1991), it incorporated the motivating-factor language into the ADA, as the ADA explicitly refers to and adopts the enforcement provisions of Title VII, including § 2000e-5, see 42 U.S.C. § 12117(a). We, therefore, cannot draw the same inference from Congress's actions as the Supreme Court did in Gross for the ADEA. See also Lewis v. Humboldt Acquisition Corp ., 681 F.3d 312, 324 (6th Cir. 2012) (Clay, J., dissenting) (explaining why the rationale of Gross does not apply to the ADA); id. at 326 (Stranch, J., dissenting) (providing context for the enactment of the ADA and the Civil Rights Act of 1991 and arguing that the motivating-factor standard applies). But see Gentry v. E. W. Partners Club Mgmt. Co. Inc. , 816 F.3d 228, 234-35 (4th Cir. 2016) (applying the rationale from Gross to the ADA); Lewis , 681 F.3d at 318-19 (en banc) (same); Serwatka v. Rockwell Automation, Inc ., 591 F.3d 957, 962 (7th Cir. 2010) (same).
Second, the 2008 Amendments show that Congress wanted to retain, not eliminate, the motivating-factor standard. The primary purpose of the 2008 Amendments was to "reinstat[e] a broad scope of protection to be available under the ADA" because several Supreme Court cases had *356 narrowed that scope of protection. ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(b), 122 Stat. 3553, 3554 (2008). It is not clear, then, why, as the majority suggests, the 2008 Amendments would warrant deviating from the motivating-factor standard we, and our sister circuits, applied for years before the amendments. See, e.g. , Head v. Glacier Nw. Inc ., 413 F.3d 1053, 1065 (9th Cir. 2005) ; Parker , 204 F.3d at 337 ; Baird ex rel. Baird v. Rose , 192 F.3d 462, 470 (4th Cir. 1999) ; Foster v. Arthur Andersen, LLP , 168 F.3d 1029, 1033-34 (7th Cir. 1999) ; McNely v. Ocala Star-BannerCorp ., 99 F.3d 1068, 1076 (11th Cir. 1996) ; Katz v. City Metal Co ., 87 F.3d 26, 33 (1st Cir. 1996) ; Buchanan v. City of San Antonio , 85 F.3d 196, 200 (5th Cir. 1996) ; Pedigo , 60 F.3d at 1301.
Moreover, Congress knew that courts applied the motivating-factor standard in evaluating ADA claims. It could have changed the ADA's causation standard with the 2008 Amendments, but it did not do so. "[W]e have recognized that Congress' failure to disturb a consistent judicial interpretation of a statute may provide some indication that Congress at least acquiesces in, and apparently affirms, that interpretation." Monessen Sw. Ry. Co. v. Morgan , 486 U.S. 330, 338, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988) (internal quotation marks and alteration omitted). The fact that Congress amended the ADA to reject an interpretation of the ADA that was not aligned with Congress's intent demonstrates that it likely would have done so for the ADA's causation standard if the courts, in applying the motivating-factor standard, were applying the wrong standard. Its decision not to amend the ADA indicates its at least implicit acceptance of the motivating-factor standard.
Third, the language of the ADA confirms that the motivating-factor standard still applies. While the ADA does not explicitly incorporate § 2000e-2, it does incorporate § 2000e-5, and § 2000e-5(g)(2)(B) specifically refers to the motivating factor standard. See 42 U.S.C. § 12117(a).[1] If we interpret the ADA to apply the but-for standard of causation, that provision would be rendered irrelevant and superfluous. See, e.g. , Nat'l Ass'n of Mfrs. v. Dep't of Def. , --- U.S. ----, 138 S.Ct. 617, 632, 199 L.Ed.2d 501 (2018) ("The Court is obliged to give effect, if possible, to every word Congress used." (internal quotation marks omitted)); Rubin v. Islamic Republic of Iran , --- U.S. ----, 138 S.Ct. 816, 824, --- L.Ed.2d ---- (2018) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (internal quotation marks omitted)). But see Lewis , 681 F.3d at 319-20 (concluding that "the ADA's incorporation of § 2000e-5 [is not] meaningless" because it contains "dozens of other provisions ... that remain applicable under the ADA"). Moreover, there is nothing to indicate that Congress chose not to *357 incorporate § 2000e-2 into the ADA with the intent that the stricter causation standard would apply. Indeed, if that had been its intent, it would have omitted § 2000e-5(g)(2)(B), and it surely would have explained why it was making such a significant change. See also id. at 325 (Clay, J., dissenting) (explaining why a but-for standard imposes a greater burden on individuals than Congress intended).
Finally, the ADA's legislative history makes clear that Congress intended claims under the ADA to continue to have the same causation standard as claims under Title VII. When Congress enacted the ADA, it intended for the ADA's remedies to "parallel" Title VII's remedies because "[t]he remedies should remain the same, for minorities, for women, and for persons with disabilities. No more. No less." 136 Cong. Rec. H2615 (daily ed. May 22, 1990) (statement of Rep. Edwards). A House Report explained that "if the powers, remedies and procedures change in [T]itle VII of the 1964 Act, they will change identically under the ADA for persons with disabilities." H.R. Rep. No. 101-485, pt. 3, at 48 (1990), as reprinted in 1990 U.S.C.C.A.N. 445, 471. Therefore, "[b]y retaining the cross-reference to [T]itle VII, the Committee's intent [wa]s that the remedies of [T]itle VII, currently and as amended in the future , will be applicable to persons with disabilities." Id. (emphasis added); see also Lewis , 681 F.3d at 322-23 (Clay, J., dissenting) (explaining why the ADA's legislative history supports applying a motivating-factor standard).
For those reasons, I believe the ADA's causation standard continues to be the motivating-factor standard. Because the Rehabilitation Act incorporates the ADA's causation standard, the motivating-factor standard applies to Natofsky's claims. Under the motivating-factor standard, Natofsky "must show only that disability played a motivating role" in defendants' decision to take adverse employment action; Natofsky "need not demonstrate that disability was the sole cause of the adverse employment action." Parker , 204 F.3d at 337.
Here, Natofsky has put forth evidence that Pogoda and Ulon were at least motivated in part by Natofsky's disability. First, Natofsky presented evidence that Pogoda -- whose discriminatory intent can be imputed to Peters, see Vasquez v. Empress Ambulance Serv., Inc ., 835 F.3d 267, 272-73 (2d Cir. 2016) (applying cat's paw theory of liability to a claim evaluated under the mixed-motive causation standard) -- fixated on the physical markers of his hearing disability, shook her head in disgust and rolled her eyes after Natofsky told her about his hearing disability, demanded he speak faster, and otherwise ridiculed him for his speech. Second, as evidence of Ulon's discriminatory animus, Natofsky presented evidence of two conversations during which his disability was discussed: his exchange with Ulon about email responsiveness and Hearn's conversation with Ulon regarding Natofsky's hours and vacation request. There was other evidence as well, including inexplicably harsh treatment: when new management came in, Natofsky quickly fell from a highly compensated, highly-evaluated supervisor to a poorly-evaluated generalist making just over half his prior salary and confined to what had been his former assistant's cubicle. "[C]onstruing the evidence in the light most favorable" to Natofsky and "drawing all reasonable inferences in his favor," a reasonable juror could conclude that Natofsky's disability was a motivating factor in the adverse employment actions against him and that the reasons stated by Pogoda, Peters, and Ulon were pretextual. McElwee v. Cty. of Orange , 700 F.3d 635, 640 (2d Cir. 2012).
*358 Accordingly, I would vacate the district court's award of summary judgment dismissing Natofsky's discrimination and failure-to-accommodate claims and remand for those claims to be considered under the correct legal standard, and I respectfully dissent to that extent.

In relevant part, § 2000e-5(g)(2)(B) provides that where an individual proves a violation of § 2000e-2(m) ("an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice"), the relief is limited if the "respondent demonstrates that the respondent would have taken the same action in the absence of the motivating factor." But see Lewis , 681 F.3d at 320 (explaining that "§ 2000e-5 does not direct judges to apply the substantive motivating factor standard from § 2000e-2(m) ; it permits them only to provide a remedy for plaintiffs who prove a violation under section 2000e-2(m)," which "says nothing about disability status" (internal quotation marks and alterations omitted)).