**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-3064
_____

ERIN COLEMAN,
                              Appellant

v.

CHILDREN'S HOSPITAL OF PHILADELPHIA
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2-22-cv-01445)
District Judge:  Honorable Gerald A. McHugh
_____

Argued
September 5, 2024

Before:  JORDAN, HARDIMAN, and PORTER, *Circuit Judges*

(Filed: October 15, 2024)

Danielle Drew
Mark R. Natale   [**ARGUED**]
Malamut & Associates
457 Haddonfield Road – Suite 500
Cherry Hill, NJ  08002
        *Counsel for Appellant*

Jessica Rickabaugh   [**ARGUED**]
Tucker Law Group
1801 Market Street
Ten Penn Center – Suite 2500
Philadelphia, PA  19103
    *Counsel for Appellee*

————————————

OPINION[*]

————————————

**JORDAN**, *Circuit Judge*.

## I.   OVERVIEW

Erin Coleman was fired from her job at the Children's Hospital of Philadelphia ("CHOP") after taking medical leave.  She sued CHOP for disability discrimination and retaliation under the Americans with Disabilities Act ("ADA") and retaliation under the Family Medical Leave Act ("FMLA").  The District Court granted summary judgment in favor of CHOP.  We will affirm.

## II.   BACKGROUND

Coleman was a nurse supervisor in CHOP's neonatal intensive care unit from January 2018 until she was fired in March 2021.  By CHOP's admission, she was "a very high-functioning operational leader."  (J.A. at 660:23-24.)  Further evidence of that was the nurse director's encouragement for her to pursue higher education in anticipation of possible promotion opportunities, and Coleman followed through on that suggestion.  Unfortunately, however, in the fall of 2020, Coleman experienced debilitating

———————————

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

gastrointestinal pain and had to have her gallbladder removed in early October. She requested and received forty-five days of medical leave under the FMLA between October and November. In December, Coleman tested positive for COVID-19, forcing her to remain home for another two weeks.

Coleman testified that, upon her return to work in January 2021, "a weirdness" infected her relationship with her direct supervisor, nurse manager Meghn Menke. (J.A. at 221:12**, 11-16**.) What had been a positive and supportive relationship appeared to turn cold. For instance, in February, Menke questioned Coleman's ability to do some tasks she had previously performed well. Then, a more specific source of tension arose. In late February, Menke noted an anomaly on Coleman's timecard and asked her to explain it. Menke testified that she asked whether Coleman had worked in person at CHOP for forty hours that week and Coleman answered in the affirmative. Suspicious, Menke reviewed Coleman's garage access in and out of CHOP's parking lot and noticed that the timing of Coleman's access card swipes did not match the hours on Coleman's timecard. Coleman had, it appeared, overreported her time on-site by nineteen hours during the previous two-week pay period.

Menke met with Coleman again and, according to CHOP, asked if Coleman had worked on premises during the relevant period; Menke said Coleman answered yes. Coleman describes the interview differently. She says that Menke asked about hours worked, not hours worked on-site. While admitting that she worked partially from home, Coleman asserts that Menke told her she was allowed to.

3

Pending further investigation, Menke suspended Coleman for violating CHOP's Rules of Conduct C8 ("Employees are expected to conduct themselves in a manner that supports the Hospital's mission, vision and values.") and C18 ("Employees are required to be truthful in all work-related activities."). (J.A. at 501.) Menke then consulted with a CHOP Human Resources Representative, Elise Saunders, who "made a recommendation to terminate" Coleman, and Saunders subsequently did so, with Menke's agreement. (J.A. at 729:20-21.) It is undisputed that Saunders did not know Coleman had previously taken medical leave.

Coleman sued CHOP for discrimination and retaliation under the ADA and retaliation under the FMLA, alleging that CHOP fired her because of her disabilities and medical leave. The District Court granted summary judgment in favor of CHOP, holding that Coleman had failed to demonstrate a causal link between the leave she took and CHOP's decision to fire her. It determined that the evidence showed CHOP terminated her for lying on her timecard, and Saunders, who made the recommendation to terminate, "did not even know [Coleman] had taken medical leave." (J.A. at 18-19.) The Court also rejected Coleman's ADA retaliation claim because she did not invoke the ADA when asking for medical leave. Coleman timely appealed.

III. **DISCUSSION**[1]

At oral argument before us, Coleman conceded that she did not appeal the District Court's holding that she failed to establish a causal link between her disability and

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant

4

termination, as is required for an ADA discrimination claim,[2] nor did she challenge the

District Court's holding that she had failed to adequately invoke the ADA in asking for

medical leave.[3] Those issues are therefore forfeited, leaving only her FMLA retaliation

---

of summary judgment and apply the same standard as the District Court. *Hayes v. New Jersey Dep't of Hum. Servs.*, 108 F.4th 219, 221 (3d Cir. 2024). Summary judgment is appropriate if, when viewed in the light most favorable to the non-moving party, there is no genuine issue of material fact and "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

[2] The ADA prohibits discrimination against "a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). A prima facie case of disability discrimination requires proof "that [the employee] was disabled, was qualified for the job, and suffered discrimination because of his disability." *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021). Most Courts of Appeal to consider the requisite causation standard after the Supreme Court's opinions in *Gross v. FBL Financial Services*, 557 U.S. 167 (2009) and *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013) have held that the employee must demonstrate "but-for" causation. *Natofsky v. City of New York*, 921 F.3d 337, 348-50 (2d Cir. 2019); *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235-36 (4th Cir. 2016); *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014); *Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019); *Akridge v. Alfa Ins. Cos.,* 93 F.4th 1181, 1192 (11th Cir. 2024). *But see EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 702-03 (5th Cir. 2014) (allowing for a "motivating factor" causation standard); *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017) (preserving the question but applying "but-for"); *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 757 n.6 (8th Cir. 2016) (preserving the question); *see also Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1002 (8th Cir. 2012) ("We have our doubts about the vitality of the pre-*Gross* [ADA] precedent."). Because Coleman loses on either basis, we refrain from ruling on this important issue.

[3] The District Court did not cite a case for that last portion of its ruling, and it is open to debate. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506-07 (3d Cir. 2010) ("[T]he law does not require any formal mechanism or 'magic words' to notify an employer that an employee needs an accommodation[.]"); EEOC, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act*, 2002 WL 31994335, at *4 (Oct. 17, 2002) (opining that an employee seeking an accommodation "need not mention the ADA or use the phrase 'reasonable

5

claim for us to decide.  *See Griswold v. Coventry First LLC*, 762 F.3d 264, 274 n.8 (3d

Cir. 2014) ("Because they failed to brief the issue on appeal and conceded as much at

oral argument, they have forfeited the argument."); *LabMD Inc. v. Boback*, 47 F.4th 164,

191 (3d Cir. 2022) ("The failure to challenge an independent basis for a district court's

decision is fatal to a [summary-judgment] appeal.").

The FMLA prohibits "any employer to interfere with, restrain, or deny the

exercise of or the attempt to exercise, any right provided under this subchapter[,]"

including requesting medical leave.  29 U.S.C. § 2615(a)(1); *see id.* § 2612(a)(1)(D) (an

employee is entitled to leave "[b]ecause of a serious health condition that makes the

employee unable to perform the functions of the position of such employee").

Employees may sue under the FMLA if "the taking of FMLA leave [w]as a negative

factor in [an] employment action[.]"  29 C.F.R. § 825.220(c); *Egan v. Delaware River

Port Auth.*, 851 F.3d 263, 271 (3d Cir. 2017).[4]

_____

accommodation'").  But the issue is not properly before us and we imply nothing by
foregoing a discussion of it here.

[4] Because of a Department of Labor interpretation of the FMLA, we permitted a
"motivating factor" causation standard for FMLA retaliation claims in *Egan v. Delaware
River Port Authority*, 851 F.3d 263 (3d Cir. 2017) pursuant to *Chevron U.S.A., Inc. v.
Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  But whether that holding
withstands the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144
S. Ct. 2244 (2024), which overturned *Chevron*, is open to question.  *See Comcast Corp.
v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020) ("Th[e] ancient and
simple 'but for' common law causation test … supplies the 'default' or 'background' rule
against which Congress is normally presumed to have legislated when creating its own
new causes of action." (quoting *Nassar*, 570 U.S. at 346-47)).  We do not definitively
rule on that question today, however, because once again Coleman's claim also fails
under the lesser "motivating factor" standard.

6

When a plaintiff does not present direct evidence of discriminatory intent, we analyze an FMLA retaliation claim under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022). Under that framework, the employee must first demonstrate a prima facie case, namely that "(1) she invoked her right to leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 158-59 (3d Cir. 2015). Then, the employer "has the burden of producing evidence that presents a legitimate, non-retaliatory reason for having taken the adverse action." *Canada*, 49 F.4th at 346 (cleaned up). Finally, "[i]f the employer meets this burden, the burden then shifts back to the plaintiff to demonstrate that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (internal quotation marks omitted).

The District Court held that Coleman failed to make a prima facie case of retaliation because she failed to demonstrate a causal link between her invocation of FMLA rights in October 2020 and her termination in March 2021. We agree. Under our precedent, causation may be inferred when "the temporal proximity between the protected activity and the adverse action is unusually suggestive." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (cleaned up). But when "the temporal proximity is not unusually suggestive, we ask whether the proffered evidence, looked at as a whole, may suffice to raise the inference" of retaliation. *Id.* (cleaned up). The "gap of three months between" Coleman's FMLA leave and her termination "cannot

7

create an inference of causation." *Id.* at 233. Coleman's proffered circumstantial evidence of retaliatory motive is speculative, so a reasonable jury could not find that her FMLA leave had anything to do with her termination. While Menke questioned whether Coleman could fulfill some of her duties in February 2021, that was over two months after she returned from FMLA leave, and Menke's questions do not suggest a retaliatory motive.

The District Court's holding also relied on the fact that Saunders – who recommended terminating Coleman for lying on her timecard – did not know Coleman had taken leave. Thus, medical leave could not have been a "factor" in her decision. *See* 29 C.F.R. § 825.220(c); *cf. Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002) ("[T]o establish discrimination because of a disability, an employer must know of the disability."); *Jones v. United Parcel Serv.*, 214 F.3d 402, 406 (3d Cir. 2000) ("It is, of course, an axiom of any ADA claim that the plaintiff be disabled and that the employer be aware of the disability."). During oral argument, Coleman suggested that Saunders was Menke's "cat's paw," having based the decision to terminate upon false or misleading information from Menke. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011). Coleman did not, however, raise that argument in her briefing, so we cannot rightly review it now. *Griswold*, 762 F.3d at 274 n.8; *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146 (3d Cir. 2017) ("Nor will we reach arguments raised for the first time … at oral argument.").

8

Accordingly, we agree with the District Court that Coleman failed to establish a prima facie case under the FMLA because she cannot demonstrate that her termination "was causally related" to her medical leave. *See Hansler*, 798 F.3d at 158-59.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.