**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2960
_____

JOHN MOROZIN,
Appellant

v.

PHILADELPHIA HOUSING AUTHORITY; BRANVILL BARD, individually;
JOANNE STRAUSS, individually

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-02174)
Hon. Juan R. Sánchez, Chief District Judge
_____

Argued on November 15, 2022

Before: HARDIMAN, RESTREPO, and PORTER, *Circuit Judges*.

(Filed: November 29, 2022)

Andrew R. Olcese [Argued]
Timothy S. Seiler
Karpf Karpf & Cerutti
3331 Street Road
Suite 128, Two Greenwood Square
Bensalem, PA 19020
        *Counsel for Appellant*

Emily E. Mahler [Argued]
Margolis Edelstein
535 Smithfield Street

Suite 1100
Pittsburgh, PA 15222

     *Counsel for the Appellee*

_____

OPINION[*]

_____

HARDIMAN, *Circuit Judge*.

John Morozin appeals the District Court's summary judgment for Defendants Philadelphia Housing Authority (PHA), Joanne Strauss, and Branville Bard. Morozin's discrimination claims fail because he did not identify similarly situated comparators who were treated more favorably, and his retaliation claims fail because he did not show Defendants' proffered reasons for his termination were pretextual. We will affirm.

I

Morozin worked for PHA's police department, first as a patrol officer when he was hired in 2013 and then as a lieutenant when he was promoted in 2015. PHA terminated his employment in June 2016. At that time, Strauss was PHA's Executive Vice President of Human Resources, and Bard was its Chief of Police. Morozin is Caucasian; Strauss and Bard are African American.

Before Morozin's termination, he filed a series of complaints about his pay. As early as September 2015, Morozin emailed human resources to complain that he was not

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

receiving his overtime wages. The issue persisted for months, and Morozin sent a series of emails and memoranda to Bard, Strauss, and various human resources employees seeking payment. On May 22, 2016, Morozin threatened to take his issues outside of PHA if they were not addressed. Morozin again followed up on June 5th, and by June 10th, his issues were resolved. The payroll problems at PHA were not limited to Morozin—other employees complained about mistakes during the same timeframe, some many times over.

In late May 2016, Bard approached Strauss about firing Morozin. Bard explained that Morozin was a "disruption to the department" who did not support Bard's community-policing initiatives and allegedly organized a "sick-out" to leave a shift understaffed. App. 419 at 83:5–18. Strauss expressed disagreement with Bard's termination justification because she felt it was "not necessarily a reason to fire anyone," particularly considering the timing in relation to Morozin's complaints. App. 422 at 89:1–22. In response, Bard highlighted that Morozin was an at-will employee. Bard then drafted a two-page memorandum detailing why he had "lost confidence" in Morozin and would terminate him. App. 505–06. Bard complained that: Morozin openly challenged Bard's mandate about PHA's jurisdiction; was the subject of multiple citizen complaints; failed to discipline or otherwise correct poorly performing subordinates; organized a sick-out; and failed to carry out a lawful order. Morozin was fired on June 15, 2016.

Morozin identifies three African-American PHA employees who he alleges were similarly situated to him but were not terminated. First, Lieutenant Geraldine Coleman, who was responsible mainly for administrative tasks (though sometimes led patrols when

there were staffing shortages), was demoted for poor performance. Second, Lieutenant Shawn Artis was transferred to a position in the radio room after he proved ineffective in the field. And third, Sergeant Abdul Evans was disciplined and then demoted for insubordination and poor performance.

Morozin sued PHA under Title VII, Strauss and Bard under 42 U.S.C. § 1981, and all three Defendants under the Fair Labor Standards Act and state law. He alleged his termination was racially discriminatory and in retaliation for his complaints about unpaid overtime. The District Court granted summary judgment against Morozin on all counts. On the discrimination claims, the Court reasoned that Morozin failed to make a prima facie case of disparate treatment because Coleman, Artis, and Evans were not similarly situated to him. On the retaliation claims, the Court concluded that Morozin failed to make a prima facie case because the ten-day gap between his last complaint and his termination was not unusually suggestive of causation. And on all claims, the Court alternatively concluded that Morozin failed to show the proffered, legitimate reasons for his termination were pretextual. Morozin timely appeals.

II[1]

Morozin argues the District Court erred when it concluded that he failed to satisfy the fourth element of a prima facie racial discrimination claim. To meet his prima facie burden, Morozin had to show that his proposed comparators—African-American

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

4

employees Coleman, Artis, and Evans—were similar "in all material respects," though not necessarily identical.[2] *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (citation omitted); *see also Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 304–07 (3d Cir. 2004) (analyzing, in an age-discrimination case, whether the proposed comparators were similar as to various relevant factors).

We agree with the District Court's thorough explanation for why each of Morozin's proposed comparators was not similarly situated. Morozin was a lieutenant who led patrol officers. He was terminated in part because of his insubordination and refusal to correct the behavior of his subordinates, which Bard worried was "poisoning young, impressionable officers." App. 367. In contrast, Coleman's role was mainly administrative and involved less supervision and leadership of inferior officers, and her misconduct amounted to poor performance, not insubordination. Artis, like Coleman, was disciplined only for being ineffective in his role as lieutenant, not for insubordination that risked disorder among lower-ranked officers. And Evans was only a sergeant, so he held less of a leadership role. Because Morozin failed to identify similarly situated employees outside his protected class who were treated more favorably, he failed to make a prima facie case for discrimination.

---

[2] The District Court also considered and rejected evidence of other "circumstances … [that] give rise to an inference of discrimination," which Morozin argued met the fourth element of his prima facie claim. *See Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015). While Morozin mentions in passing that he disputes the District Court's conclusion on this issue, his argument focuses on his purported comparators. So Morozin forfeited any argument that he carried his burden as to the fourth element of his prima facie claim other than through evidence of similarly situated comparators. *See Kopec v. Tate*, 361 F.3d 772, 775 n.5 (3d Cir. 2004).

III

The District Court also rejected Morozin's retaliation claims at the prima facie stage, reasoning that the ten-day lapse between his final overtime-pay complaint and his termination was insufficient alone to show causation. On appeal, Morozin makes a forceful argument that the temporal connection was "unusually suggestive" of causation and thus sufficient to make out a prima facie retaliation claim. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (finding seven days between protected activity and termination unusually suggestive, especially because the termination decision was made even closer to the protected activity). But we need not decide this question because Morozin failed to carry his burden at the pretext stage of the *McDonnell Douglas* framework. We will affirm on that ground.

When a plaintiff makes out a prima facie case for retaliation, the defendant may proffer evidence of legitimate reasons for the adverse action, at which point the burden shifts back to the plaintiff to show that those reasons are pretextual. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022). PHA proffered a slew of legitimate reasons for Morozin's termination: the citizen complaints against him; his failure to discipline or otherwise correct the performance of an inferior officer; and multiple alleged acts of insubordination including organizing a sick-out, refusing to follow a lawful order, and undermining Bard's jurisdictional instructions. On appeal, Morozin cites the timing of his termination and Bard's purported shifting rationale as evidence of pretext. We agree with the District Court that this evidence is insufficient.

First, the temporal proximity between Morozin's complaints and his termination

6

would not alone permit a reasonable jury to conclude that Defendants' "proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006), as amended (Sept. 13, 2006) (citation omitted). In other words, the timing does not "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (quotation marks and citations omitted). And while Morozin is correct that "evidence supporting the prima facie case is often helpful in the pretext stage," *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000), the burden-shifting framework would be meaningless if the same evidence that made out a prima facie case ordinarily sufficed, without more, to show pretext. *See Fuentes*, 32 F.3d at 764 (noting plaintiffs face a "difficult burden" at the pretext stage).

Second, Bard's memorandum detailing his reasons for firing Morozin was not inconsistent with the reasons he first provided Strauss, so Morozin's contention that Bard offered a shifting rationale for termination is unconvincing. Bard originally told Strauss he wanted to terminate Morozin for organizing a sick-out, refusing to support Bard's community-policing initiative, and being a "disruption to the department." App. 420 at 83:5–18. Bard's memorandum, drafted shortly after speaking to Strauss, similarly cited the alleged sick-out and Morozin's negative impact on PHA's community-policing focus. And the other reasons Bard provided in the memo—Morozin's refusals to follow a direct order or discipline a subordinate, for instance—can fairly be read as explaining why Bard

7

believed Morozin was a "disruption," rather than as providing new or conflicting reasons.

In short, viewing the evidence in the light most favorable to Morozin, a reasonable jury could not conclude that the stated reasons for Morozin's termination were pretextual and that retaliation was the true motivation. *See Moore*, 461 F.3d at 342. This is particularly true considering other PHA employees also raised complaints about payroll mistakes in the same timeframe and were not disciplined.

\*     \*     \*

For the reasons stated, we will affirm the summary judgment for PHA, Strauss, and Bard.