**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3286
_____

SUKETU PATEL,
                              Appellant

v.

CF FRESH LLC d/b/a Country Fresh Mushroom Company
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:22-cv-01010)
District Judge:  Honorable Mark A. Kearney
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on October 26, 2023

Before: HARDIMAN, FREEMAN, and MONTGOMERY-REEVES, *Circuit Judges*

(Opinion filed: March 6, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge*.

Suketu Patel sued CF Fresh LLC for employment discrimination and retaliation. The District Court concluded that Patel's evidence could not support either claim, so it entered judgment for the defendant. We will affirm.

I[1]

In November 2015, Patel entered into an employment agreement to serve as the Senior Vice President and Chief Financial Officer of Country Fresh Mushroom Company ("CFM"). Patel identifies as an Asian man of Indian ancestry and was CFM's only executive-level employee of color.

From November 2015 through January 2019, Patel reported to CFM's Chief Executive Officer Edward Leo. Patel witnessed Leo routinely make racist comments and jokes about several minority groups, including Hispanics, African Americans, and Jews. Richard Ogorek, a consultant who did work for CFM from 2018 through January 2019, exchanged racist jokes with Leo.

In January 2019, Giorgi Global Holdings, Inc. ("Giorgi") acquired CFM and renamed the company CF Fresh LLC ("CF Fresh"). At the time of the acquisition, three people in leadership positions at Giorgi discussed revisiting Patel's employment agreement because it was inconsistent with the contracts of other Giorgi employees, all of

---

[1] We recount the facts in the light most favorable to Patel and draw all inferences in his favor. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000).

2

whom worked at will.[2, 3]  Nonetheless, Giorgi assumed Patel's employment agreement with CFM.

After the acquisition, Patel reported directly to Giorgi's Chief Financial Officer, Mike Sobota.  Leo remained a consultant to Giorgi, was often present in the CF Fresh office, and continued to make racist comments and jokes.  Ogorek was not present in the CF Fresh office post-acquisition.

During a meeting in May 2019, Joe Caldwell, president of one of CF Fresh's corporate affiliates, told Patel, "I'm not a nice guy.  I'm not.  I'm only nice to people to get information . . . .  I can make life very difficult for people like you."  App. 115.  Patel interpreted these remarks to be racially motivated and threatening.

In mid-August 2019, Patel approached Sobota to request an increase in compensation.  Sobota agreed to conduct an internal and external benchmark inquiry in connection with Patel's request.  The inquiry revealed that Patel received more compensation than people higher up in the company and people working for larger companies.  On August 27, 2019, Giorgi's Global General Counsel and Chief Compliance Officer Michael Rettig sent Sobota and Chief Human Resources Officer

---

[2] The discussion was among Chief Financial Officer Mike Sobota, Chief Human Resources Officer Gina DeLillo, and Global General Counsel and Chief Compliance Officer Michael Rettig.

[3] The agreement provided for one-year terms that automatically renewed unless one party gave written notice of non-renewal two months before the term expired.  The agreement also provided that either party could terminate the agreement for any reason or for no reason at all upon forty-five days' written notice.

3

Gina DeLillo a draft notice that would inform Patel that his contract would not be renewed.

On August 30, 2019, Sobota met with Patel to share the results of the benchmark inquiry. Sobota told Patel that he was the third highest-paid finance employee globally and made enough money. In response, Patel said he was not being treated equally to his white counterparts. He also (for the first time) complained about Leo's racist comments and the May 2019 threatening remarks from Caldwell. After Patel voiced his complaints, Sobota told Patel that CF Fresh would not renew his contract. Later that day, Patel received written confirmation that his contract would expire on November 2, 2019, and would not be renewed, although he would remain employed on an at-will basis.

After the August 30 meeting, Sobota ceased his regular communications with Patel and instructed Patel not to attend a sales conference in California.

In September 2019, Laura Matar, CF Fresh's President and Chief Operating Officer, told Sobota that Patel was often difficult to locate when he should have been in the office. Following that discussion, an employee in the HR department tracked Patel's attendance. He reported that, over a ten-week period from September to November 2019, there were 15 days when Patel did not come to the office, not counting vacation days. CF Fresh provides employees some flexibility for remote work, and before November 2019, no one at CF Fresh told Patel that he needed to be in the office more often.

Sometime between September and November 2019, Sobota also learned that Patel and his subordinate, Nick Stalloni (a white man), had been charging lunches to their company credit cards. In November 2019, Sobota calculated that the two employees had

4

expensed sixty-seven lunches between February 7, 2019 and November 12, 2019, totaling more than $3,500. Patel admits that he and Stalloni incurred those charges. A supervisor approved all of Patel's expensed meals, and before November 2019, no one at CF Fresh spoke to Patel about expensing meals.

On November 11, 2019, Patel emailed Matar to report that he and Stalloni were attending an off-site meeting that day. Sobota discovered that this was untrue. Patel admits that he lied about the off-site meeting to justify his and Stalloni's desire to work from home.

On November 18, 2019, Sobota and DeLillo confronted Patel about his absences from the office, his expensed meals, and his dishonesty about his whereabouts on November 11. Patel did not respond to any of their questions. CF Fresh terminated Patel's employment that day. That same day, it terminated Stalloni for the same misconduct. Sobota had previously terminated another employee for lying about his whereabouts during work hours.

II

Patel obtained a right to sue letter from the EEOC and then sued CF Fresh. He claimed discrimination (based on race and ancestry) and retaliation under Title VII and 42 U.S.C. § 1981, and breach of contract under Pennsylvania law. CF Fresh moved for summary judgment on all claims. Patel opposed the motion on the federal claims only.

The District Court entered judgment for CF Fresh on all claims. It held that Patel failed to establish a prima facie case of race or ancestry discrimination. In the alternative, it held that Patel could not show that CF Fresh's articulated nondiscriminatory motives

5

for firing him were pretextual.  As to retaliation, the Court held that Patel made out a prima facie case but failed to show pretext.  It also entered judgment for CF Fresh on the breach of contract claim.  Patel timely appealed.[4]

## III

The District Court had subject-matter jurisdiction over Patel's federal claims under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the grant or denial of a motion for summary judgment.  *Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is a genuine factual dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  We may affirm on any basis supported by the record.  *TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019).

## IV

Title VII makes it unlawful for an employer to discriminate against an employee based on the employee's protected status, 42 U.S.C. § 2000e-2, or to "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter," 42 U.S.C. § 2000e-3(a).  Similarly, section 1981 protects individuals against discrimination and retaliation in the making and

---

[4] On appeal, Patel challenges the resolution of his federal claims only.

enforcement of contracts, including at-will employment contracts.  42 U.S.C. § 1981;

*Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022) (citing *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008)).

Claims of race and ancestry discrimination and claims of retaliation under Title VII and section 1981 are governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*.  411 U.S. 792, 802 (1973);[5] *see also Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015).  A complainant must first establish a prima facie case of discrimination or retaliation.  *McDonnell Douglas*, 411 U.S. at 802; *Daniels*, 776 F.3d at 193.  If the complainant successfully establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the adverse employment action.  *Id.*  If the employer does so, the complainant then must show that the employer's stated reason for the action was a pretext for discrimination or retaliation.  *McDonnell Douglas*, 411 U.S. at 804; *Daniels*, 776 F.3d at 193.

We assume without deciding that Patel made out a prima facie case of race and ancestry discrimination and retaliation.  Nevertheless, his claims fail because he did not present evidence to demonstrate that CF Fresh's articulated reasons for terminating his employment were a pretext for discrimination or retaliation.

---

[5] "The substantive elements of a [racial discrimination] claim under § 1981 are generally identical to the elements of an employment discrimination claim under Title VII." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 256 (3d Cir. 2017) (alteration in original) (citation omitted).

CF Fresh offers two nondiscriminatory and non-retaliatory reasons for firing Patel: (1) violating CF Fresh's policy regarding expenses and remote work, and (2) dishonesty. To demonstrate pretext at the summary judgment stage, Patel must offer evidence from which the factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons, or (2) believe a discriminatory or retaliatory reason was more likely than not a motivating cause of the termination. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). He may do so by exposing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in CF Fresh's proffered legitimate reasons for terminating his employment that a reasonable factfinder could find "unworthy of credence." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 306 (3d Cir. 2007) (citation omitted).

Patel admits that he lied about his whereabouts during work hours on November 11. There is no dispute that Sobota previously fired an employee for dishonesty about his whereabouts during work hours, and Patel offers no evidence to suggest that CF Fresh's decision to fire him on this basis was pretextual. So even if a jury discounted Patel's purported violations of CF Fresh's expense and remote work policies, it could not conclude that the remaining proffered reason for his termination (dishonesty) is unworthy of credence. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 476 (3d Cir. 2005) ("Our Court has held that the plaintiff must demonstrate that *each* of the employer[']s proffered nondiscriminatory reasons are pretextual.").

\*　　\*　　\*

For the reasons discussed above, we will affirm.

8