**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2962
_____

ANDRE FIELDS; KENDALL GREEN;
ANDRE ROUNDTREE

v.

AMERICAN AIRLINES, INC.; US AIRWAYS, INC.,
AT PHILADELPHIA INTERNATIONAL AIRPORT (PHL) HUB

Andre Fields, Kendall Green,
                                        Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:19-cv-00903)
District Judge:  Honorable Karen S. Marston

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 11, 2024

Before:  SHWARTZ, RESTREPO, and FREEMAN, Circuit Judges

(Opinion filed: July 25, 2024)
_____

OPINION*
_____

PER CURIAM

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellants Andre Fields and Kendall Green, proceeding pro se, appeal the District Court's order granting defendant's motion for summary judgment. For the following reasons, we will affirm.

I.

In 2019, Fields and Green, fleet service agents at Philadelphia International Airport, filed a complaint against their employer, American Airlines, raising discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and state law.[1] Appellants thrice amended their complaint, and American filed a motion to dismiss. The District Court granted that motion in part, dismissing Appellants' "top filling" claims and three other counts with prejudice. Appellants filed a fourth amended complaint, in which they asserted hostile work environment, retaliation, disparate treatment, and disparate impact claims under Title VII, § 1981, and the Pennsylvania Human Relations Act ("PHRA"). The parties completed discovery, and American moved for summary judgment. The District Court held oral argument on the motion, then granted it. Appellants filed a timely notice of appeal.

II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment.[2] Blunt v. Lower Merion Sch. Dist., 767

---

[1] A third plaintiff, Andre Roundtree, voluntarily dismissed his claims in 2022.

[2] In their opening brief, Appellants challenge only the District Court's grant of summary judgment to American on their retaliation and hostile work environment claims. Our review is thus limited to only those arguments, and we deem forfeited any other potential challenges to the District Court's order, like those related to Appellants' "top filling"

F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III.

We will affirm the District Court's grant of summary judgment to American on Appellants' retaliation claims. Under the burden-shifting framework established by McDonnell Douglas Corporation v. Green, Appellants had the initial burden of establishing a prima facie case of retaliation. See 411 U.S. 792, 802 (1973). To establish a prima facie case, Appellants must show that they engaged in Title VII-protected activity, that they suffered an adverse action, and that a causal nexus existed between the adverse action and protected activity.[3] See Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022). If Appellants establish a prima facie case, the burden shifts to American to "articulate some legitimate, nondiscriminatory reason" for the adverse action. McDonnell Douglas, 411 U.S. at 802. Appellants then have the burden

---

claims. See M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020) (holding that the appellant forfeited claims by failing to raise them in the opening brief).

[3] We examine Appellants' Title VII, § 1981, and PHRA claims together because they fall under the same analytical framework. See Atkinson v. Lafayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims."); Lewis v. Univ. of Pittsburgh, 725 F.2d 910, 915 n.5 (3d Cir. 1983) (explaining that actions brought under § 1981 require the same elements of proof as a Title VII action).

to demonstrate that the legitimate reason for the action offered by American was pretext. See Canada, 49 F.4th at 346.

Appellants asserted that they were disciplined in retaliation for filing an Occupational Health and Safety Administration complaint against American. In that complaint, however, Appellants alleged that they were threatened with discipline for alerting American to alleged safety violations, which does not constitute protected activity for the purposes of their Title VII retaliation claims.[4] See 42 U.S.C. § 2000e-3(a) (prohibiting employers from retaliating "against any . . . employee[ ] . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter"); Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir. 1995) (explaining that a general "complain[t] about unfair treatment" does not constitute protected activity for purposes of a claim of discriminatory retaliation).

Appellants also contended that, after they initiated charges with the Equal Employment Opportunity Commission and Pennsylvania Human Relations Commission, American understaffed the bag carousel on which Fields worked and required Green to

---

[4] It is undisputed that Appellants violated American's policies regarding safety wear, baggage delivery, and security badge renewal, resulting in the disciplinary actions they cited in their complaint. Green received a Level 1 write-up for failing to timely renew his security badge, as mandated by company policy. He discussed that write-up with a manager who was not involved in issuing it, and the manager commented that the write-up was "what [Green] can expect when [he] want[s] to be a Black Panther." Dkt. No. 148-4 at 153. That comment could theoretically suggest that American's proffered reason for the discipline was pretext. See Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994). But, as explained, Green asserted that he received that write-up in retaliation for filing the OSHA complaint, not for engaging in protected activity under Title VII, so he failed to establish a prima facie case of retaliation. See Canada, 49 F.4th at 346.

report to flights that arrived near the beginning of his shift.[5]  Beyond general assertions, Fields provided no evidence that the carousel, which he opted to work on, was understaffed, especially given its consistently lower bag load.  And even if Green could establish a prima facie case of retaliation, American proffered a legitimate, nondiscriminatory reason for the eight flight assignments he identified: American neutrally assigns flights based on operational needs and employee availability, a process that in recent years has been automated by computer software.[6]  Beyond his own speculation and conjecture, which is insufficient to defeat summary judgment, see Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014), Green failed to identify a material issue of fact demonstrating that that reason was pretext for discrimination, see Fuentes, 32 F.3d at 762; see also Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 262 (3d Cir. 2017) (plaintiffs have burden to show there were "weaknesses, implausibilities, inconsistencies,

---

[5] Fields also claimed that American sent him a letter about attending an "official company meeting . . . warning of potential termination" in retaliation for the filing.  Dkt. No. 84 at 18 (internal quotations omitted).  To the extent the letter could be considered an adverse action, Fields failed to establish a causal nexus existed between it and any protected activity.  He received the letter in June 2019, six months after filing the charges.  That gap, standing alone, is too long to establish temporal proximity.  See Qin v. Vertex, 100 F.4th 458, 477 (3d Cir. 2024) (reiterating in the context of a Title VII retaliation claim that "the inference of 'unduly suggestive' proximity 'begins to dissipate when there is a gap of three months or more'" (citation omitted)).

[6] Appellants also claimed that American retaliated against them by failing to investigate formal and verbal complaints they made between 2019 and 2021.  But Appellants' general assertions, without any supporting evidence, are insufficient to create a genuine issue of material fact as to whether American retaliated against them in that manner.  See Nitkin v. Main Line Health, 67 F.4th 565, 571 (3d Cir. 2023) (explaining that, to withstand a motion for summary judgment, a plaintiff "must point to concrete evidence in the record that supports each . . . essential element of his case" (internal quotations and citation omitted)).

incoherencies, or contradictions from which a reasonable juror could conclude that the Defendants' explanation is unworthy of credence, and hence infer that the employer did not act for the asserted non-retaliatory reasons" (cleaned up)). Accordingly, judgment in favor of American on Appellants' retaliation claims was proper.

IV.

We also will affirm the District Court's grant of summary judgment to American on Appellants' hostile work environment claim.[7] To prevail on that claim, Appellants had to show that they suffered intentional discrimination that was severe or pervasive and

---

[7] The longest statute of limitations applicable to Appellants' claims is four years, pursuant to § 1981. See 42 U.S.C. § 2000e-5(f)(1); 43 Pa. Cons. Stat. § 962(c)(2); Jones v. R.R. Donnelly & Sons Co., 541 U.S. 369, 382-83 (2004). But under the continuing violations doctrine, because a hostile work environment does not "occur on any particular day" but "over a series of days or perhaps years," Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002), courts may consider earlier component acts part of the same unlawful employment practice when at least one of the acts occurred within the limitations period, see Doe v. Mercy Cath. Med. Ctr., 850 F.3d 545, 566 (3d Cir. 2017) (explaining that acts are part of the same practice if they "involved similar conduct by the same individuals, suggesting a persistent, ongoing pattern" (internal quotations and citation omitted)). The doctrine does not apply to discrete discriminatory acts, like the denial of training. See O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006). Here, the District Court correctly applied the doctrine to Appellants' allegations, concluding that all but two identified acts outside of the statutory period were discrete, did not involve the same individuals, or were remediated by intervening action by American. See Morgan, 536 U.S. at 114 & 118; see also Ford v. Marion Cty. Sheriff's Office, 942 F.3d 839, 854 (7th Cir. 2019) (explaining that an "intervening remedial action by the employer" supports a finding that a discriminatory incident is severed from a hostile work environment claim); Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 329-30 (5th Cir. 2009) (holding that employer's "prompt remedial action" regarding discrimination was an intervening action that precluded reliance on the continuing violations doctrine); cf. Mandel, 706 F.3d at 167 ("[M]any of the acts that occurred prior to the applicable limitations period involved similar conduct by the same individuals, suggesting a persistent, ongoing pattern.").

that detrimentally affected them, that the discrimination would detrimentally affect a reasonable person in like circumstances, and that American was responsible. See Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017); Mandel v. M & Q Packaging Corp., 706 F.3d 157, 168 (3d Cir. 2013) (explaining that a court must consider the "totality of the circumstances" in determining whether an environment is hostile, including the frequency and severity of the discriminatory conduct, and "whether it is physically threatening or humiliating, or a mere offensive utterance" (internal quotations and citation omitted)).

The District Court identified the following actions for Appellants' hostile work environment claim:[8] that colleagues made racist comments, that they were subjected to racist imagery that American failed to promptly remove or investigate, and that Fields had "verbal altercations" with white colleagues regarding work assignments.[9] On appeal, Appellants argue that the District Court erred by failing to consider the cumulative effect of the racist imagery they encountered and by failing to substantively discuss exhibits offered in support of their claim. We disagree. The District Court correctly considered the totality of the imagery, its context, and the relative timespan of the acts rather than parsing each image individually.[10] See Mandel, 706 F.3d at 168. And we discern no

---

[8] Appellants do not challenge the District Court's characterization on appeal.

[9] Appellants also asserted that the bag carousel where Fields worked was understaffed. As discussed, Fields failed to produce evidence to support this assertion.

[10] Appellants also contend that the District Court's descriptions of two of the images they encountered failed to capture the imagery's offensive connotation. We discern no error in the District Court's factual descriptions of these images.

7

error in the District Court's failure to substantively consider photographs Appellants offered in response to American's motion for summary judgment, as they were presented without context or connection to Appellants' case. See Nitkin, 67 F.4th at 571 (where District Court properly excluded "general, unsubstantiated allegations" because plaintiff was required to "set forth specific facts establishing a triable issue" (internal quotations omitted)).

Regardless, even if Appellants had otherwise met their burden in supporting a hostile work environment claim, we agree with the District Court that Appellants did not show that American neglected its duty to take remedial action when required (and Appellants have not argued to the contrary in their brief). See Huston v. Proctor & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009) (employer liability for co-worker harassment exists only if employer failed to provide reasonable avenue for complaint or if employer knew or should have known of harassment and failed to take prompt and appropriate remedial action). Appellants provided no evidence that they reported their colleagues' racist comments or verbal altercations to management or had no means to report those acts.[11] Beyond their own general assertions, Appellants failed to support their allegations that American did not investigate and remove the racist imagery they encountered. On the contrary, when Appellants did report that imagery to

---

[11] In their amended complaint, Appellants referred to their ability to make both verbal and written complaints to supervisors and Human Resources.

management, American promptly removed it.[12]  The District Court thus correctly concluded that American was entitled to judgment as a matter of law on Appellants' hostile work environment claim.

V.

For the foregoing reasons, we will affirm the District Court's judgment.

---

[12] Although Appellants state in their brief that a manager admitted that he was personally aware of the racist imagery but American did not take any action to remove it, that statement is contrary to the record.  The manager testified that, when he received a report about racist graffiti in a bathroom stall, he alerted the Security and Human Resources departments, and an investigation occurred.  The former plaintiff in this matter testified that, after he showed that manager the racist graffiti in the bathroom stall, the manager told him that it was "horrible" and had it painted over.