**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1691
_____

MICHAEL MARKOWITZ,
                                        Appellant

v.

WILLIAM NICHOLSON, CHCA;
ROBERT GILMORE, Former Superintendent;
JAMES FETTERMAN, CRNP;
SHARON COLAIZZI, CRNP;
DR. TIMOTHY KROSS
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2:20-cv-01311)
District Judge:  Honorable David Stewart Cercone
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 18, 2023

Before:  KRAUSE, PHIPPS, and SCIRICA, Circuit Judges

(Opinion filed: September 26, 2023)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Pro se appellant Michael Markowitz, a Pennsylvania state prisoner, suffers from chronic pain. He alleges that prison doctors and administrators stopped prescribing him the pain medication he had relied on for many years without providing any effective replacement, leaving him in constant pain—and violating the Eighth Amendment. The District Court granted summary judgment for all defendants. For the following reasons, we will affirm.

I.

Because Markowitz appeals from the grant of summary judgment, we construe the facts in the light most favorable to him. Markowitz is incarcerated at SCI-Greene. He suffers from medical conditions and injuries—primarily a .38-caliber bullet wound to his neck—that cause him chronic neuropathic pain. ECF No. 4 at 3. For about 15 years, Markowitz's pain had been treated with the drug gabapentin, also known by the brand name Neurontin. In April 2019, prison doctor Timothy Kross took Markowitz off gabapentin because of its potential for abuse and because other pain medications are available. Markowitz immediately filed two prison grievances. Prison officials denied the grievances, finding that Kross's decision was based on his sound medical judgment. Nonetheless, Markowitz's gabapentin was renewed about a month after Kross had stopped it, and he continued to receive gabapentin until mid-December 2019. That month, Markowitz learned that the prison planned to discontinue his gabapentin

prescription once again and transition him to a different drug, duloxetine (brand name Cymbalta). Markowitz immediately filed another grievance protesting the change, but prison officials denied the grievance as frivolous. The officials noted that Markowitz had already filed unsuccessful grievances about not getting gabapentin and said that his complaints amounted to mere disagreements about his preferred pain medication. Over the next month, Markowitz's gabapentin dosage was lowered and duloxetine introduced, until his gabapentin was stopped completely in January 2020.

After exhausting the grievance process, Markowitz filed a verified complaint in September 2020 under 42 U.S.C. § 1983, stating that the loss of gabapentin had left him in constant and extreme pain for the past nine months. He further stated that the duloxetine was ineffective at treating the pain, that prison officials knew it because he had told them so through the grievance process, and that the officials failed to remedy the situation. Markowitz argues that this amounts to cruel and unusual punishment under the Eighth Amendment. His complaint named five defendants. Three, Dr. Kross, Nurse Colaizzi, and Nurse Fetterman, are medical providers who treated him. Two are prison administrators: Nicholson was the Corrections Health Care Administrator at SCI-Greene, and Gilmore was the prison superintendent.

The District Court denied the administrators' motion to dismiss the complaint for failure to state a claim against them. ECF No. 29. But following discovery, the District Court granted summary judgment for all defendants.[1] ECF No. 118. Markowitz appeals.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment de novo. Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022). Summary judgment is appropriate only when the evidence on record shows that "there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts in the light most favorable to the non-moving party, Markowitz, and draw all reasonable inferences in his favor. See Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 267 (3d Cir. 2005). And because Markowitz is pro se, we construe his pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 520–521. But the "mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." Wharton v. Danberg, 854 F.3d 234, 241 (3d Cir. 2017). We may affirm on any basis supported by the record. Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 751 (3d Cir. 2019).

## III.

---

[1] Markowitz also moved for summary judgment, which the District Court denied.

To avoid summary judgment and proceed to trial, Markowitz had to present evidence sufficient for a reasonable jury to find (1) that his medical needs were serious, and (2) that prison officials were deliberately indifferent to those needs. Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017). Like the District Court, we assume without deciding that Markowitz's medical needs were serious. See ECF No. 110 at 6. So this appeal turns on whether a reasonable jury, viewing the evidence in the light most favorable to Markowitz, could find that the Defendants showed deliberate indifference to those needs.

Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. Where a prisoner has received some amount of medical treatment, we presume that the treatment was adequate absent evidence that it violated professional standards of care. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). "Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements." Palakovic v. Wetzel, 854 F.3d 209, 228 (3d Cir. 2017). But the bar to relief is a high one. Even if the prisoner's medical care is inadequate, the prisoner must also show that the prison doctor or administrator acted with a sufficiently culpable state of mind. Mere medical negligence or malpractice is not enough. Palakovic, 854 F.3d at 227, citing Estelle v. Gamble, 429 U.S. 97, 105–06 (1976). Rather, the prisoner must show that the prison doctors or administrators (1) delayed, denied, or interfered with needed medical care intentionally, or (2) recklessly

5

disregarded a substantial risk that the prisoner would suffer serious harm. <u>Giles v. Kearney</u>, 571 F.3d 318, 330 (3d Cir. 2009); <u>Estelle</u>, 429 U.S. at 104–05.

One way to establish the requisite mental state is to show that a medical provider persisted in a course of treatment despite knowing that it was ineffective. <u>See, e.g.</u>, <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990). This is Markowitz's theory of relief.

## IV.

Markowitz has failed to produce sufficient evidence of deliberate indifference to his pain by any of the medical providers. Dr. Kross saw Markowitz only once, on April 12, 2019. ECF No. 92-2 at 237–39. Markowitz explained that he has suffered from neuropathic pain since he was shot in the neck and asked Kross to renew his prescription for gabapentin. <u>See</u> <u>id.</u> Kross performed some clinical assessments and ordered x-rays of Markowitz's neck to better understand his pain. <u>Id.</u> Kross states that he decided not to renew Markowitz's gabapentin prescription due to its known propensity for abuse, and because other pain medications are available. ECF No. 92-4 at 9–10. And Markowitz has produced no evidence indicating that this was based on anything other than his professional judgment. Kross does not appear to have any involvement in Markowitz's care apart from this one visit, so he cannot be said to have "persisted" in any course of treatment. True, Kross did not prescribe Markowitz any pain medication to replace the gabapentin that he had decided should be discontinued. But Kross was not the only medical professional treating Markowitz at the time, and Markowitz has not shown that it

6

was Kross's duty to prescribe a gabapentin substitute after this visit. Markowitz has provided no other evidence that would allow a jury to infer that Kross intended to harm him or acted with reckless disregard for his pain. So the District Court's grant of summary judgment for Kross was proper.

Markowitz's claims against Nurse Colaizzi fail for similar reasons. After Dr. Kross initially stopped Markowitz's gabapentin in April 2019, Markowitz saw Colaizzi for medical care three times. At the first visit, Markowitz complained that he was in pain, and Colaizzi restarted his gabapentin. ECF No. 86-2 at 2; ECF No. 92-2 at 358. At the second visit, he again complained of pain, and Colaizzi renewed his gabapentin. ECF No. 86-2 at 3; ECF No. 92-2 at 376. The third visit was on January 7, 2020, as Markowitz was being transitioned from gabapentin to duloxetine. ECF No. 86-2 at 4. Markowitz complained that the duloxetine was ineffective and that his pain was agonizing. Id. Colaizzi did not put him back on gabapentin, but she suggested a different medication, topiramate (brand name Topamax), that he agreed to try. Id. Colaizzi does not appear to have any involvement in Markowitz's care after this third visit, and she did not prescribe him the topiramate or any other medication after seeing him. But Colaizzi was not the only medical professional treating Markowitz at the time, and Markowitz has not shown that it was her duty to prescribe him medications after this third visit. Markowitz has provided no other evidence that would allow a jury to infer that Colaizzi intended to harm

7

him or acted with reckless disregard for his pain. So the District Court's grant of summary judgment for Colaizzi was proper.

Markowitz has also not shown evidence of deliberate indifference by Nurse Fetterman. On December 12, 2019 he asked Fetterman why his gabapentin was being cut again. Fetterman told him "The doctor did that,"[2] and that "[T]he government doesn't want it prescribed and also the D.O.C." ECF No. 4-1 at 2; ECF No. 92-2 at 197. So by Markowitz's own telling, the decision to take him off gabapentin was not Fetterman's. Nor did Fetterman persist in a course of conduct that he knew was ineffective. On December 30, Markowitz complained to Fetterman that the duloxetine was not working and asked to see a specialist for his pain and arthritis. ECF No. 92-2 at 195. Fetterman prescribed Markowitz acetaminophen (Tylenol), ordered follow-up lab work from the chronic care clinic, and referred him to the "doc line" for further evaluation for pain control. Id. at 195–96.[3] After this visit, Fetterman renewed Markowitz's duloxetine prescription on multiple occasions. See id. at 390, 396, 401, 418, 423, and 509. And Fetterman treated Markowitz for unrelated conditions as well, including renewal of his chronic care medications. See id. at 443–47, 454, 484, 494, and 509. There is no evidence

---

[2] Fetterman may have been referring to Dr. Paul Delbianco, who entered a reduced gabapentin prescription for Markowitz the next day. See ECF No. 92-2 at 389.

[3] Prescribing acetaminophen alone might have presented a closer question. See West v. Keve, 571 F.2d 158 (3d Cir. 1978) (reversing dismissal of a prisoner's § 1983 complaint alleging that the prison had used aspirin alone to treat his pain following surgery and would not allow him to see a doctor for post-operative treatment).

that Markowitz complained to Fetterman on these or any other occasions about the duloxetine being ineffective. So there is no evidence that Fetterman knew that he was persisting in a course of treatment that did not work. Thus, the District Court's grant of summary judgment for Fetterman was proper.

Markowitz also fails to show deliberate indifference by the prison administrators Nicholson and Gilmore. Markowitz correctly notes that one way to show that prison administrators acted with the requisite mental state is if they had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." Pearson, 850 F.3d at 543, quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). And Markowitz has provided evidence that his grievances put the administrators on notice of his complaints about ineffective pain treatment. See, e.g., ECF No. 86-1 at 6. But that while this knowledge is *necessary* to prove deliberate indifference, it is not *sufficient*. As these defendants correctly note, to hold them personally liable under § 1983, Markowitz must also show that they were personally involved in the conduct that violated his constitutional rights. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Id. Here, Markowitz has not alleged (much less proven) that either administrator personally directed the medical staff to stop giving him gabapentin. And he has not shown that the medical providers who treated him violated his Eighth Amendment rights, so the administrators cannot have "acquiesced" to such a

9

violation. Therefore, Markowitz has failed to show deliberate indifference by the administrators, and we need not reach their arguments on qualified immunity or Eleventh Amendment immunity.

V.

For these reasons, we will affirm the judgment of the District Court.